**EXHIBIT A TO APA**

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In Re: ) | Case No.: 15- |
| ) | |
| **NEWTON MANUFACTURING CO.** ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession. ) | Hon. |
| ) | |
| 1123 1st Ave. E ) | **FIRST DAY MOTION** |
| Newton, IA 50208 ) | |
| ) | **ORDER (A) APPROVING THE BID** |
| EIN:  42-0437950 ) | **PROCEDURES AND BID** |
| ) | **PROTECTIONS, INCLUDING A** |
| ) | **BREAK-UP FEE, IN CONNECTION** |
| ) | **WITH THE AUCTION AND** |
| ) | **SALE OF ASSETS AND** |
| ) | **SCHEDULING AN AUCTION AND** |
| ) | **SALE HEARING; (B) APPROVING** |
| ) | **ASSUMPTION OF ASSET PURCHASE** |
| ) | **AGREEMENT; (C) APPROVING** |
| ) | **FORM AND MANNER OF NOTICE;** |
| ) | **(D) APPROVING PROCEDURES FOR** |
| ) | **DETERMINING CURE AMOUNTS;** |
| ) | **AND (E) GRANTING OTHER** |
| ) | **RELATED RELIEF** |
| ) | |
| _____ ) | No Hearing Set |

THIS MATTER having come before the Court on the motion (the "Motion") [Docket No. ___] dated May 31, 2015, of the Debtor for entry of an order approving, among other things: (a) bid procedures including certain bid protections in connection therewith including a Breakup Fee and Expense Reimbursement (as defined below) (substantially in the form attached hereto as **Exhibit A**, the "Bid Procedures") and scheduling an Auction and the Sale Hearing for the sale of the Assets (as that term is defined in the Bid Procedures); (b) the assumption of the Agreement (as attached as Exhibit A to the Motion and as that term is defined in the Bid Procedures); and (c) the form and manner of notice of sale by auction of the Assets (substantially in the form

attached hereto as **Exhibit B**, the "Sale Notice").[1] After due deliberation, and having reviewed the Motion, any objections thereto, and materials submitted by the parties, and having considered the statements of counsel on the record, and the evidence adduced with respect to the Motion at a hearing to consider same, and having considered the agreements announced by the parties, and having determined that the relief requested in the Motion is in the best interests of the Debtors and their estates, in light of the circumstances described by counsel and reflected in the evidence,

**THE COURT HEREBY FINDS THAT:**[2]

A.  This court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007, and 9014.

C.  Notice of the Motion having been given to the Notice Parties (as defined below) is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

D.  The Debtors have articulated good and sufficient reasons for this court to grant the relief requested in the Motion regarding the sales process, which is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtor's estate, including, without limitation: (i) approval of the Bid Procedures and the bid protections contained therein (the "Bid Protections") and, under the circumstances described herein, the

---

[1] Unless otherwise stated, capitalized terms not defined herein shall have the meanings set forth in the Agreement and the Bid Procedures.

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Fed. R .Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Breakup Fee and Expense Reimbursement (as defined below); (ii) determination of final Cure Amounts in the manner described herein; and (ii) the form and manner of notice of sale by auction.

E.  The Breakup Fee and Expense Reimbursement to be paid under the circumstances described in the Agreement to the Stalking Horse Purchaser (as that term is defined in the Bid Procedures) are: (i) actual and necessary costs and expenses of preserving the Debtor's estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Purchaser; (iv) necessary to induce the Stalking Horse Purchaser to continue to pursue the sale transaction and to continue to be bound by the Agreement; and (v) necessary to induce the Stalking Horse Purchaser to continue to pursue the sale transaction and to continue to be bound by the Agreement.

F.  The Breakup Fee and Expense Reimbursement also induced the Stalking Horse Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtor, its creditors and other bidders may rely.  The Stalking Horse Purchaser has provided a material benefit to the Debtor and its creditors by increasing the likelihood that the best possible price for the Assets (as defined in the Bid Procedures) will be received.  Accordingly, the Bid Procedures, Bid Protections, and the Breakup Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate.

G. Assumption of the Agreement constitutes a fair and reasonable exercise of Debtor's business judgment and is fair, reasonable and in the best interests of Debtor's estate, creditors and equity holders.

H. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Sale Hearing and Auction, including the date, time and place of the Auction, and the time fixed for the filing of objections to the Auction or sale of the Assets.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED EFFECTIVE IMMEDIATELY THAT:**

1. The Bid Procedures and Sale Notice are hereby approved in their entirety. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures and Bid Protections.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled (and all reservations of rights included therein) as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled on the merits except as otherwise set forth herein.

3. The Debtor is authorized and directed to assume the Agreement pursuant to section 365 of the Bankruptcy Code, and the Agreement is hereby deemed to be assumed by the Debtor immediately upon the entry of this order.

4. Within two (2) business days of entry of this order, the Debtor (or its agent) shall serve by first class mail, postage prepaid, copies of: (i) this order (the "Bid Procedures Order") (ii) the Bid Procedures; and (iii) the Sale Notice, upon the following entities (collectively, the "Notice Parties"):[3]

---

[3] The Sale Notice will direct parties to contact Development Specialists, Inc., attention Fred C. Caruso, Investment Banker for Debtor, for more information and will provide that any party that wishes to obtain a copy of any related

4

  (a)  the United States Trustee;

  (b)  counsel to the Creditors' Committee;

  (c)  counsel to Permitted Encumbrance holders;

  (d)  the Internal Revenue Service and the Iowa Department of Revenue

  (e)  the United States Department of Justice;

  (f)  state, county, and municipal governments having jurisdiction over any of the Assets;

  (g)  all parties that have requested special notice pursuant to Fed.R.Bankr.P. 2002;

  (h)  all persons or entities known to the Debtor that have or have asserted a lien on, or security interest in, all or any portion of the Assets;

  (i)  all Contract Parties;

  (j)  counsel to the Stalking Horse Bidder;

  (k)  all potential bidders previously identified by or otherwise known to the Debtor; and

  (l)  all of the Debtor's employees.

5.  The Breakup Fee and Expense Reimbursement as set forth in the Agreement are hereby approved.

6.  If the Stalking Horse Purchaser becomes entitled to receive the Breakup Fee and Expense Reimbursement in accordance with the terms of the Agreement, then the Stalking Horse Purchaser shall be, and hereby is:

  (a)  granted an allowed administrative claim in the Debtor's chapter 11 case in an amount equal to the Breakup Fee and Expense Reimbursement, under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; and

---

document (subject to any necessary confidentiality agreement) may make such a request in writing to Development Specialists, Inc., attention Fred C. Caruso, Three First National Plaza, 70 West Madison St., Suite 2300, Chicago, IL 60602, fcaruso@dsi.biz.

KCP-4418961-1

(b) granted a priority in payment, and priority in lien, over any and all claims of holders with existing liens on the Assets (as defined in the Bid Procedures) or the proceeds of the sale thereof, as the case may be.

7. No person or entity, other than the Stalking Horse Purchaser, shall be entitled to any expense reimbursement, breakup fee, "topping," termination, or other similar fee or payment.

8. The Debtor is authorized and directed to pay the Breakup Fee and Expense Reimbursement to the Stalking Horse Purchaser on the earlier of: (a) the Closing Date and (b) the date such obligation comes due pursuant to the Agreement; _provided_, _however_, that, if all or part of the Breakup Fee and Expense Reimbursement remain unpaid as of the Closing Date, all such amounts shall be paid directly to the Stalking Horse Purchaser from the proceeds from the sale of the Assets prior to any other disbursements made to any party pursuant to any order of this Court authorizing the sale of any assets of the Debtor or otherwise.

9. If the Stalking Horse Purchaser objects to the manner in which the Debtor has conducted the Auction or the Debtor's determination of a Qualified Bid as the highest or best bid, it shall have standing at the Sale Hearing to contest the Debtor's determination or conduct of the Auction, and shall be permitted to make a further bid at the Sale Hearing for consideration by the Bankruptcy Court as the highest or best bid.

10. As further described in the Bid Procedures, the Sale Hearing will commence on **June [26], 2015** at [**10:00 a.m.] prevailing Central time** or at such other hour on that date as the Court shall announce. The Sale Hearing may be adjourned by the Bankruptcy Court from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

11. Objections, if any, to the remainder of the relief requested in the Motion must: (a) be in writing and filed with this court **no later than June 21, 2015** (the "_Objection Deadline_");

6

(b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and (c) be served upon the Debtor, counsel for the creditors' committee (if any), and counsel for the Stalking Horse Purchaser so as to be **actually received** on or before the Objection Deadline.

12. The Auction to conduct bidding with respect to the sale of the Assets, if necessary, shall have commenced by no later than June [25], 2015 at 2:00 p.m. and shall have been completed no later than June [26], 2015.

13. Notwithstanding the possible applicability of Fed.R.Bankr.P. 6004(h), 7062, 9014 or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

14. All time periods set forth in this order shall be calculated in accordance with Fed.R.Bankr.P. 9006(a).

15. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted herein.

16. To the extent that this order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this order shall govern.

17. This court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Agreement and this order.

IT IS SO ORDERED.

Date:

_____
United States Bankruptcy Judge

Reviewed and approved:

7

KCP-4418961-1

/s/
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
*Proposed General Reorganization Counsel for Debtor*


/s/
Ryan Bennett, Esq. (admitted *pro hac vice*)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Phone:  312-862-2074
Fax:  312-862-2200
*Counsel for Halo Branded Solutions, Inc.*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEWTON MANUFACTURING CO., | ) | Case No. [_____] ([__]) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**BID PROCEDURES**

The above-captioned debtor and debtor in possession (the "Debtor")[1] has filed a chapter 11 case pending in the Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court") under Case No. 15-[_____] ([__]). By motion dated May _____, 2015 (the "Motion"), the Debtor sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which it will determine the highest and best offer for certain assets related to the Debtor's promotional products business (the "Assets"). On June _____, 2015, the Bankruptcy Court entered an order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

On June [26], 2015, at [10:00] [a.m.] (Central Time), as further described below, in the Motion, and in the Bid Procedures Order, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which the Debtor shall seek entry of an order (the "Sale Order") authorizing and approving the sale of the Assets (the "Proposed Sale") to the Stalking Horse Purchaser (as defined below) or to one or more other Qualified Bidders (as defined below) that the Debtor, in its sole discretion, determines to have made the highest and best offer.

*Agreement*

On May 30, 2015, the Debtor entered into an asset purchase agreement (the "Agreement"), with Halo Branded Solutions, Inc. (the "Stalking Horse Purchaser"), pursuant to which the Stalking Horse Purchaser proposes to acquire the Assets. Pursuant to the Agreement, the Stalking Horse Purchaser would provide consideration for the Assets as provided in the Agreement in the sum of (i) $2,106,063 in cash, (ii) $1,013,763 in additional consideration, subject to certain adjustments, and (iii) the assumption of certain liabilities (collectively the "Purchase Price"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code sections 363 and 365.

*Assets for Sale*

The Debtor is offering for sale in one or more transactions the Assets, which are certain assets related to the Debtor's promotional products business.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

*Participation Requirements*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party interested in the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel the following:

1. Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtor (a "Confidentiality Agreement"); and

2. Proof of Financial Ability to Perform. Written evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction. Such information should include, *inter alia,* the following:

    (a) the Potential Bidder's current financial statements (audited if they exist);

    (b) contact names and numbers for verification of financing sources;

    (c) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

    (d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction; *provided* that the Debtor shall determine, in its reasonable discretion, in consultation with the Debtor's advisors and professionals duly-approved by the Bankruptcy Court, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

*Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. If the Debtor determines that a Potential Bidder that has satisfied the requirements of subsections 1 and 2 above does not constitute a Qualified Bidder (defined herein), then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information from and due diligence access for Potential Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (defined herein) but may do so in its reasonable business judgment. The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Proposed Sale.

**Bidding Process**

The Debtor and advisors and professionals duly-appointed by the Bankruptcy Court, shall: (i) determine whether a Potential Bidder is a Qualified Bidder (defined herein); (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process").

*Bid Deadline*

**The deadline for submitting bids shall be June [22], 2015, at 5:00 p.m. (Central Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Bidder that desires to make an offer, solicitation, or proposal (a "Bid") shall deliver written copies of its Bid to: (i) the Debtor, Newton Manufacturing Corporation, 1123 1st Avenue E, Newton, Iowa 50208, Attn: Mancil Laidig, with a copy to counsel for the Debtor, Bradshaw, Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309, Attn: Jeffrey D. Goetz; (ii) investment banker to the Debtor, Development Specialists, Inc., 70 West Madison St., Suite 2300, Chicago, IL 60602, Attn: Fred Caruso; (iii) counsel to the Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Ryan B. Bennett and Alexandra Schwarzman; and (iv) co-counsel to the Stalking Horse Purchaser, Cutler Law Firm, 1307 50th Street, West Des Moines, Iowa 50266, Attn: Robert C. Gainer (collectively, the "Notice Parties"), by the Bid Deadline, *provided* that any confidential financial information may be delivered to the Debtor and its counsel only.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid (defined herein).

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the conditions set forth below. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

1. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $210,000. The Stalking Horse Purchaser shall not be required to submit a Good Faith Deposit.

2. Minimum Bid. The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor and shall be in an amount greater than or equal to the aggregate of the sum of:

    (a)    $2,106,063 in cash; ***plus***

    (b)    $1,013,763 in additional consideration; ***plus***

3

    (c)    $100,000 in cash; **_plus_**

    (d)    the dollar value of $200,000 for the Breakup Fee in cash; **_plus_**

    (e)    the dollar value of $200,000 for the Expense Reimbursement.

3. <u>Irrevocable</u>. Each Bid must be irrevocable until the Bankruptcy Court enters the Sale Order; *provided* that if such Bid is accepted as the Successful Bid or Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable until two (2) business days after the Assets have been sold pursuant to the Sale Order (the "<u>Termination Date</u>").

4. <u>The Same or Better Terms</u>. Each Bid must be on terms that, in the Debtor's business judgment, are the same or better than the terms of the Agreement.

5. <u>Executed Agreement</u>. Each Bid must be based on the Agreement and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an alternate transaction (the "<u>Modified Agreement</u>"). A Bid shall include a copy of the Agreement marked against the Modified Agreement to show all changes requested by the Bidder (including those related to the purchase price and to remove all provisions that apply only to the Stalking Horse Purchaser as the stalking horse bidder, such as the Expense Reimbursement provisions contained in the Agreement). [The Modified Agreement must contain a representation that the Bidder shall make all necessary HSR Act filings, if any, and pay all costs and expenses of such filings (including the Debtor's costs and expenses).]

6. <u>Contingencies</u>. Each Bid (a) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence other than as may be included in the Agreement, but (b) may be subject to the accuracy in all material respects at the closing of the Proposed Sale of specified representations and warranties or the satisfaction in all material respects at the closing of the Proposed Sale of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

7. <u>Financing Sources</u>. Each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Proposed Sale satisfactory to the Debtor with appropriate contact information for such financing sources.

8. <u>No Fees Payable to Qualified Bidder</u>. Except with respect to the Expense Reimbursement and the Breakup Fee provided to the Stalking Horse Purchaser pursuant to the Agreement, a Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code section 503 related in any way to the submission of its Bid or the Bid Procedures.

    A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>" and such Bidder shall constitute a "<u>Qualified

4

Bidder." Notwithstanding anything herein to the contrary, the Agreement submitted by the Stalking Horse Purchaser shall be deemed a Qualified Bid and the Stalking Horse Purchaser a Qualified Bidder. In addition, the Stalking Horse Purchaser will receive, from each Bidder, a copy of any Bids at the time such Bid is submitted to the Debtor. The Debtor shall inform counsel to the Stalking Horse Purchaser whether the Debtor will consider such Bids to be Qualified Bids no later than two business days prior to the Auction.

In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, within three (3) business days after that determination.

The Debtor shall have the right to reject any and all Bids that it believes, in its reasonable discretion, do not comply with the Bid Procedures.

### Auction

If one or more Qualified Bids for the Assets (other than the Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtor will conduct an auction (the "Auction") to determine the highest and best Qualified Bid or combination of Qualified Bids with respect to the Assets. This determination shall take into account, among other things: (i) the amount and nature of the consideration, including any assumed liabilities; (ii) the number, type, and nature of any changes to the Agreement requested by each Bidder; (iii) the extent to which such modifications are likely to delay closing of the Proposed Sale of the Assets and the cost to the Debtor of such modifications or delay; (iv) the total consideration to be received by the Debtor; (v) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (vi) the net benefit to the estate, taking into account the Stalking Horse Purchaser's rights to the Breakup Fee and Expense Reimbursement; and (vii) any other matter as the Debtor's fiduciary duty may require (the "Bid Assessment Criteria"). For avoidance of doubt, the Debtor hereby agrees that the value attributed by the Debtor to any Bid made by the Stalking Horse Purchaser at that Auction shall at least be equal to the sum of the following: (i) the dollar value of the cash consideration contained in such Bid; (ii) the dollar value of any additional consideration contained in such Bid; (iii) the dollar value of the Breakup Fee; and (iv) the dollar value of the Expense Reimbursement. If no Qualified Bid (other than the Agreement) is received by the Bid Deadline, the Debtor may determine not to conduct the Auction.

### Procedures for Auction

The Auction, if necessary, shall take place on June [25], 2015 at [2:00] [p].m. (Central Time) at the offices of counsel for the Debtor, Bradshaw, Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309, or other such place and time as the Debtor shall notify all Qualified Bidders, including, without limitation, the Stalking Horse Purchaser, counsel for the Stalking Horse Purchaser, and other invitees. The Auction shall be conducted according to the procedures described below.

Only the Debtor and its counsel, the Stalking Horse Purchaser, and other Qualified Bidders, in each case, along with their representatives and counsel, shall attend the Auction in person, and only the Stalking Horse Purchaser and such other Qualified Bidders will be entitled

5

to make any Bids at the Auction.  The Stalking Horse Purchaser (as the secured lender) reserves the right to make any Bid comprised of cash and/or credit bid (pursuant to section 363(k) of the Bankruptcy Code or other applicable law) at the Auction.

No later than June [23] at [12:00 p.m.], the Debtor will (i) notify all Qualified Bidders, including the Stalking Horse Purchaser, of the highest and best Qualified Bid, as determined by the Debtor in the Debtor's discretion (the "Baseline Bid"), and (ii) provide to all Qualified Bidders copies of all submitted bids.

The Debtor and its professionals duly-appointed by the Bankruptcy Court herein shall direct and preside over the Auction.  Other than as expressly set forth herein, the Debtor may conduct the Auction in the manner it determine will result in the highest, best, or otherwise financially superior offer for any of the Debtor's Assets.

*Terms of Overbids*

An "Overbid" is any Bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

1. Minimum Overbid Increments:  Any Overbid after and above the Baseline Bid shall be made in increments of at least $50,000 in cash.  Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash and/or other consideration acceptable to the Debtor and, in the case of a Bid by the Stalking Horse Purchaser, a credit bid of the Expense Reimbursement.

2. Stalking Horse Purchaser May Credit Bid Expense Reimbursement:  The Stalking Horse Purchaser shall be permitted to bid at the Auction, if any, and shall be permitted to credit bid the full amount of the Expense Reimbursement pursuant to any Overbid in connection with each round of bidding in the Auction.

3. Remaining Terms are the Same as for Qualified Bids:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided* that the Bid Deadline shall not apply.  Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Overbid.

   To the extent not previously provided (which shall be determined by the Debtor), a Qualified Bidder submitting an Overbid must submit at the Debtor's request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid; *provided* that the Stalking Horse Purchaser shall not be required to submit any additional evidence.

*Announcing Overbids*

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid.

6

*Backup Bidder*

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Bid or combination of Bids at the Auction, as determined by the Debtor, in the exercise of its business judgement, will be designated as the potential backup bidder (collectively, the "Potential Backup Bidder").

In the event that a Qualified Bidder or Qualified Bidders other than the Stalking Horse Purchaser are identified by the Debtor as the Potential Backup Bidder, such Qualified Bidder or Qualified Bidders shall be required to serve as the backup bidder or backup bidders (collectively, the "Backup Bidder"). If the Stalking Horse Purchaser is determined to be the Potential Backup Bidder, the Stalking Horse Purchaser may, in its sole discretion, elect not to serve as the Backup Bidder, and the Debtor may identify the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Bid or combination of Bids, if any, as the Backup Bidder. The Backup Bidder shall be required to keep its initial Bid or combination of Bids (or if the Backup Bidder submitted one or more Overbids at the Auction, the final respective Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is 30 days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein).

Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), the Debtor may designate the Backup Bidder to be the new Successful Bidder (defined herein), and the Debtor will be authorized, but not required, to consummate the transaction or transactions with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor. The deposit of the Backup Bidder shall be held by the Debtor until the earlier of 72 hours after (i) the closing of the transaction or transactions with the Successful Bidder (defined herein) and (ii) the Outside Backup Date.

*Additional Procedures*

In addition to and not in lieu of any other provisions herein, the Debtor, with the consent of any applicable creditor's committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with any of the provisions of the Bid Procedures Order or the Agreement. Such rules by way of example may provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtor, any applicable creditor's committee, and the Stalking Horse Purchaser may, upon mutual agreement, subject to the terms of any cash collateral orders or debtor in possession financing orders in the chapter 11 cases, extend the Bid Deadline or the Auction, as determined, beyond the dates provided herein; *provided* that neither the Bid Deadline nor the Auction may be

7

extended more than 30 days. In the event of such an agreed-upon extension, the Debtor shall provide notice to the Notice Parties and any Qualified Bidders of such extension, any related time and location details with respect to same, and any consequent continuance of the Sale Hearing.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, these chapter 11 cases, the Bid Procedures, the Agreement, the Auction, or the construction and enforcement of any Successful Bidder's (defined herein) purchase agreement.

*Sale Is As Is/Where Is*

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder (defined herein). The Stalking Horse Purchaser and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to the Stalking Horse Purchaser, the terms of the sale of the Assets shall be set forth in the Agreement, or (ii) as to another Successful Bidder (defined herein), the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

*Free Of Any And All Interests*

Except as otherwise provided in the Agreement or another Successful Bidder's (defined herein) purchase agreement and subject to the approval of the Bankruptcy Court, all of Debtor's right, title, and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code section 363(f), with such Interests to attach to the net proceeds of the sale of the Assets.

*Closing the Auction*

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids for the Assets that the Debtor determines in its reasonable business judgment, after consultation with its advisors and professionals duly-appointed by the Bankruptcy Court herein, is the highest and best Qualified Bid or combination of Qualified Bids. Thereafter, the Debtor shall select one or more of such Qualified Bids, the combination of which produces the highest and best recovery to the estates, as the overall highest and best Qualified Bid or Qualified Bids (each such Bid a "Successful Bid," and each Bidder submitting such Successful Bid, a

8

"Successful Bidder"). In making this decision, the Debtor, shall consider the Bid Assessment Criteria.

The Auction shall close when each Successful Bidder for any such Assets submits fully-executed sale and transaction documents memorializing the terms of its respective Successful Bid.

Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

### Expense Reimbursement

Pursuant to the Bid Procedures Order, the Stalking Horse Purchaser is entitled to the Expense Reimbursement in accordance with the terms of the Agreement and the Bid Procedures Order.

Pursuant to the Bid Procedures Order, except for the Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five business days after the Sale Hearing. The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (i) the closing of the transaction with the Successful Bidder or Successful Bidders for the Assets and (ii) the Outside Backup Date. Upon return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder or Successful Bidders timely close their winning transactions, their respective Good Faith Deposits shall be credited toward their respective purchase prices.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on June [26], 2015 at [10:00] [a].m., or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable purchase and sale agreement or such agreement is terminated, the Debtor shall be authorized, but not required, to deem the Backup Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Backup Bid without further order of the Bankruptcy Court.

## **Modifications**

The Bid Procedures may not be modified without the express written consent of the Debtor and the Stalking Horse Purchaser.

10

# **EXHIBIT B**

**Sale Notice**

**[To Come]**

KCP-4418961-1